| 8w443 |
|137  334|

| 8 W | 443 |
| 26 SC | 107 |

## Filbert *against* Hawk.

The assignee of a judgment takes it subject to all the equities which exist between the parties to it. Hence, if the defendant in such judgment had, prior to the assignment, obtained a judgment against the plaintiff, upon an independent cause of action, it is such an equity as is available as a defence against the assignee, in a *scire facias*, upon the judgment assigned to him.

ERROR to the common pleas of *Union* county.

Peter H. Hawk, for the use of George F. Miller and Charles G. Donnel, against Charles Filbert, with notice, &c. *Scire facias* P. A. *et* D.; the defendant pleaded payment and set-off.

On the 20th of February 1833, Hawk obtained a judgment against Filbert for 50 dollars. On the 14th of February 1837, he assigned it to Charles G. Donnel and George F. Miller, for a valuable consideration, and for whose use this *scire facias* was issued. On the 1st of November 1834, Filbert brought an action of *assumpsit* against Hawk, upon which, on the 30th of March 1836, he obtained a judgment for 192 dollars 16 cents. On the trial of this cause, the defendant sought to set off this judgment *pro tanto,* and thus defeat the plaintiff's *scire facias.*

But the court below being of opinion that the set-off was not allowable, as against the present plaintiffs, directed a verdict for them.

*Linn* and *Greenough,* for plaintiff in error, cited 1 *Rawle* 291, 227; 6 *Serg. & Rawle* 448; 12 *Mass. Rep.* 195; 8 *Pick.* 342; 3 *Caines's Rep.* 190; 4 *Johns. Rep.* 63.

*Jourdon,* for defendant in error, cited 2 *Watts* 228.

The opinion of the Court was delivered by

KENNEDY, J.—The injustice, which existed at common law, of not permitting a set-off of mutual cross demands, *unconnected* with each other, so that, if of equal amount, both might thereby be satisfied and extinguished, or if of unequal amount, the less might be so and the larger *pro tanto,* was often sensibly felt: and especially in the first settlement of this state, as a province, when the scarcity of money not only tended greatly to increase the number of such demands, but rendered the payment of them, in any other way than that of set-off, frequently impracticable. It may be, therefore, that necessity as well as natural equity, produced the passage of our defalcation act in 1705, some twenty years and more before any thing of the kind was introduced into England. Their first statute

[Filbert v. Hawk.]

of set-off was not enacted till 2 Geo. 2, c. 22, which in its terms extends to "mutual debts," and was limited to five years only, but by 8 Geo. 2, c. 24, sect. 4, it was made perpetual; and as a doubt had arisen whether mutual debts of a *different* nature could be set off against each other, it was declared by the sixth section of the latter statute, that mutual debts, notwithstanding they should be of different natures, should be set off against each other, either by being pleaded in bar, or given in evidence on the general issue, except where they had accrued by reason of a penalty in a bond or specialty, then to be given in evidence under a plea showing how much was due on either side. Our "act for defalcation," embraces in its terms two or more persons "indebted to each other upon bonds, bills, bargains, promises, accounts or the like," and declares that if "one of them commence an action in any court of this province, and the defendant cannot gainsay the deed, bargain, or assumption upon which he is sued, it shall be lawful for such defendant to *plead payment* of all or part of the debt or sum demanded, and give any bond, bill, receipt, account or bargain in evidence; and if it shall appear that the defendant hath fully paid or satisfied the debt or sum demanded, the jury shall find for the defendant, and judgment shall be entered that the plaintiff take nothing by his writ, and shall pay the costs. And if it shall appear that any part of the sum demanded be paid, then so much as is found to be paid, shall be defalked, and the plaintiff shall have judgment for the residue only, with costs of suit," &c. In England it has been held no objection to the set-off of a debt, that the defendant had commenced an action for the ·recovery of that debt before the plaintiff's cause of action accrued. Knibbs *v.* Hall, *Peake's N. P. Ca.* 210; see, also, Baskersville *v.* Brown, 2 *Burr.* 1229. Nor is it an objection there to a plea of set-off that the defendant has brought an action against the plaintiff for the sum which he offers to set off, even though the plaintiff has paid the amount of the demand into court. Evans *v.* Prosser, 3 *Term* 186. So the taking of a person in execution does not satisfy the debt, so as to extinguish it, but it may still be made the subject of set-off. Peacock *v.* Jeffery, 1 *Taunt.* 426. The courts in England, since the statutes of set-off, have gradually been extending the equitable remedy of set-off. In the outset of a suit, they will compel the plaintiff to make a set-off in the affidavit to hold to bail, and will not suffer him to swear on one side only of the amount. So, at the close of the suit, the same reason and the same analogy extend to set off mutual judgments, and thereby narrow the greater execution in whatever court it happens to be. 1 *Sellon Prac.* 322, 323; 6 *Bac. Abr.* 137, tit. Set-off, C. Thus a judgment in one action may be set off against a judgment in another action, though obtained in different courts. Barker *v.* Braham, 2 *Bl. Rep.* 369, *S. C.*; 3 *Wils.* 396; Glaister *v.* Hewer, 8 *Term Rep.* 69; Schermerhorn *v.* Schermerhorn, 3 *Caines's Rep.* 190; Brewerson *v.* Harris,

[Filbert v. Hawk.]

1 *Johns. Rep.* 144; Devoy *v.* Boyer, 3 *Johns. Rep.* 247. It would, therefore, appear that, in England, as also in the state of New-York, the plaintiff in error here would have been entitled to have satisfied the judgment, claimed by the defendant in error, by setting off as much of his judgment against it as would have been sufficient for that purpose. The fact of the defendant in error having paid to Hawk a valuable consideration for the assignment of the judgment by him to them, or that of their having taken the assignment without notice of the plaintiff in error's judgment against Hawk, is wholly immaterial, and can avail them nothing, because their right to claim payment of the judgment under the assignment is purely equitable; but the plaintiff in error, if he has not a perfect legal right to his claim of set-off, has a right in equity thereto, at least as strong as the defendant's, and prior in point of time, so that, according to the maxim *qui prior est in tempore potior est in jure,* the plaintiff in error's right would be preferred. It was not in the power of Hawk, by any sale and transfer that he could make of the judgment which he had obtained against the plaintiff in error, to defeat the latter of any right which he had, either in law or equity, to have the judgment against him satisfied by means of a set-off. The defendants in error took the assignment subject to such right, whether legal or equitable, as also every equity which existed on the part of the plaintiff in error. And if it be that they would not have parted with their services or money for it, had they known that the plaintiff in error could not be compelled to pay it otherwise than by a set-off, it was their business to have inquired first of him, whether he had any objection to paying it in money. Without they had done this, and he had informed them that he had none, it is clear that they can have no ground, either in law or equity, to oppose his right of set-off. But our act of defalcation has ever been considered as more comprehensive, and as embracing cases not included within the English statutes of set-off. Agreeably to the construction which it has received, I apprehend that the plaintiff in error is entitled to his right of set-off, both in law and equity. In Kachlin *v.* Ralston, 1 *Yeates* 574, it is said by the court: "We think our defalcation act of Ann, has much more extensive words than the British statutes." So in Stiegleman *v.* Jeffries, 1 *Serg. & Rawle* 478, Chief Justice Tilghman says: "Our defalcation act is more extensive than the English, and permits the defendant, in the plea of payment, to give in evidence any bond, bill, receipt, account or *bargain*, by virtue of which he has a claim against the plaintiff." And Mr Justice Yeates, in the same case, page 479, says: "In Pennsylvania, it has often been remarked that our defalcation act is much more comprehensive than the British statutes of set-off." Also in Kachlin *v.* Mulhollan, 2 *Dall.* 238, it is said by the court that our act of defalcation extends further than the British statutes of set-off; and, notwithstanding it is so, it would seem that we have been extending it still further by carrying it beyond the natural import of its words.

VIII.—2 N*

For in Metzgar, for the use of Uhler, *v.* Metzgar, 1 *Rawle* 230, the present chief justice observes: "Our defalcation act having been found extremely beneficial in practice, has been construed more largely than the words would seem to bear." And in this last case it was held that the assignee of the assignee of a bond, took it subject to all the equities existing at the time of the second assignment between the obligor and the first assignee, notwithstanding such equities may have arisen before the bond came into the hands of the first assignee, and that a *judgment* might be set off *before a jury* against a demand not ascertained by a judgment. In reference to this, the chief justice, in delivering the opinion of the court, says: "*Judgments* are frequently set off against each other by the court, and there is no colour of argument against defalcating them from unascertained demands. A judgment may be the foundation of an action, and there is no reason why it should not be set up as a cross demand equally with a bond or a recognizance. It would be unjust to subject to the costs of a trial, a defendant who has a judgment sufficient to extinguish the plaintiff's demand altogether." The principle of this last case applies equally, if not with much more force, to the case of an action, or a *scire facias,* which is the same thing in this state, brought by the plaintiff upon a judgment to recover the amount of it, than to the case where he has brought it on a bond, or for the recovery of a demand that must be ascertained by a jury. The only difference that exists between the two cases is in his favour. In the former, he has his election to claim that the set-off shall be made by the court, under the exercise of its equitable powers and the established principles of equity, which govern it in this respect, or to submit it to the jury, as a right which he has at law, under the defalcation act, to claim that it shall be done by them; and the circumstance of the plaintiff's demand being certain and fixed by his judgment, forms no objection to the defendant's right of set-off by the jury, nor can any plausible reason be imagined why it should: it only renders the task, which the jury has to perform, the more easy, as the cross demands of the parties are ascertained in amount by the judgments, and therefore cannot be denied or controverted. In the latter case, however, the defendant has no alternative; for the plaintiff's claim against him being unascertained by judgment, he must have the set-off made, if at all, by the jury. But the principle ruled by this court in Jacoby *v.* Guier, 6 *Serg. & Rawle* 448, seems also to be decisive of the case before us. There the court, upon the application of the defendant, defalcated two judgments, which the plaintiff had obtained against him, from one of larger amount, which the defendant had previously obtained against the plaintiff, though the latter had, anterior to the application for set-off, assigned his judgment against the defendant to his counsel for professional services. Ramsey's Appeal, 2 *Watts* 228, however, has been cited and relied on by the defendants in error, as going to sustain the decision of the court

[Filbert v. Hawk.]

below, and to show that the plaintiff in error is not entitled to have the judgment, assigned to them by Hawk, defalcated from the judgment which he had, at the time of the assignment, and long previously thereto, of larger amount against Hawk. There the Agricultural Bank had a judgment against Ramsey, one-half of which the trustees of that bank assigned to the Bank of the United States; after which Ramsey obtained judgments against the Agricultural Bank, equal in amount to that which it had had against him; and this court ruled that the equity of the Bank of the United States to have payment of that portion of the judgment against Ramsey, assigned to them by the Agricultural Bank, being equal and prior, in point of time, to Ramsey's right, which was barely equitable, to claim the set-off asked for, must therefore be preferred: and accordingly refused to allow the set-off. The case is imperfectly stated, as reported, in not showing that the assignment to the Bank of the United States was prior, in point of time, to Ramsey's obtaining his judgments against the Agricultural Bank. But it is clear, from the reasoning of the chief justice, in delivering the opinion of the court, that the fact was so, for, without that, the equity of the Bank of the United States could not have been equal to Ramsey's.

Judgment reversed, and a *venire de novo* awarded.