# J. T. Lee for the use of Melissa C. Lee *versus* Newell et al., Adm'rs of Jacob Edmonds.

1. A. brought an action of debt, for the use of his wife, B., against C.'s administrators, on certain notes under seal, made by C. in favor of A., and as alleged, given by the latter to his wife. There was also evidence of A.'s indebtedness to C. about the time the notes were made. The defendants acknowledged the execution of the notes, but denied any title in B., and pleaded payment. In answer to a point submitted by them, the court instructed the jury at length, in regard to the burden on a wife to establish her claim to property in a contest with her husband's creditors; and also told them that a husband has a right to make a gift to his wife, if he has no creditors or has enough left to pay them.

*Held,* that this instruction was inapplicable to the case, and calculated to confuse the jury by leading them to infer that if A. had creditors other than C., the transfer of the notes to B. was fraudulent as to those creditors, and therefore void as to C.

*Held,* further, that in absence of any proof of fraud as to his creditors, it was lawful for A. to transfer the notes to his wife by gift, and that after knowledge of such gift by C. the latter could not take advantage of any defence made up between himself and A. in violation of

B.'s rights. C.'s consent to the gift was unnecessary except to bar some pre-existing defence to the notes.

2. It being a matter of dispute whether there was a gift to B., and if so, when it was made and when it came to the knowledge of C.

*Held*, that the acts and declarations of A., made in the absence of B., and, as alleged, after she had acquired title to the notes, were admissible in evidence.

3. A delay of seven or eight years in bringing suit on a specialty, is slight evidence of payment, varying according to circumstances; and where it is submitted to a jury to infer payment from circumstances, the weight to be given to delay or promptness in bringing suit, is for them to determine.

October 9th, 1884.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Clarion county :* Of October Term, 1884, No. 73.

Debt, by J. T. Lee for the use of Melissa C. Lee, his wife, against R. D. Newell and E. M. Lee, administrators of Jacob Edmonds, deceased, upon six notes under seal, drawn by Edmonds in favor of J. T. Lee.

One of the notes in suit, for $321, was dated May 28th, 1866, payable one year after date ; the other five were dated May 14th, 1874, for $1,000 each, and were payable in five, seven, nine, eleven and thirteen months after date respectively. On May 7th, 1874, Lee gave Edmonds a bond and mortgage for $7,000, which remained unsatisfied until December 31st, 1880.

On the trial, before KNOX, P. J., the plaintiff claimed and endeavored to show that Lee and Edmonds had business dealings with each other extending over many years, and that the five notes of May 14th, 1874, were the result of a general settlement of that date ; that the note of May 28th, 1866, was omitted from the settlement by mistake and therefore included with the others ; that Lee was entirely solvent when he received the five notes, and he delivered them to his wife Melissa, as a gift, together with the note for $321, she thereafter retaining possession of them ; that about 1876 Lee became involved, filed a voluntary petition in bankruptcy, and was adjudged a bankrupt, but before his property was actually taken into the possession of the assignee, he paid all his debts and his assignee made him a deed of reconveyance; that Mrs. Lee retained possession of said notes until after Edmond's death in June, 1882, when she demanded payment from his administrators, and being refused brought this suit on July 7th, following.

The defendants admitted the execution of the notes, but denied any title to them in Mrs. Lee and alleged payment. They offered in evidence an exemplification of the record of

Lee's proceedings in bankruptcy, and testimony to show that for years after making said notes, Edmonds was fully able to pay them, while Lee was poor and in absolute need of the money; evidence of declarations by Mrs. Lee, made in 1867, in the absence of her husband, respecting their indebtedness to Edmonds; also of declarations and admissions by Lee to the same effect, made in the absence of his wife, and after the alleged transfer of the notes to the latter; evidence of continued business dealings between Lee and Edmonds after the notes were given, and of settlements between them precluding, as alleged, the existence of any large unsettled claim.

Plaintiff, in rebuttal, gave evidence of declarations by Edmonds admitting the existence of the notes down to a short time before his death; and offered to follow with proof that Lee never actually parted with possession of his property to his assignee, by giving in evidence the deed of reconveyance from said assignee back to Lee. Offer refused. Exception. (Tenth assignment of error.)

Plaintiff submitted, inter alia, the following points:

1. "The Statute of Limitations interposes no obstacles to the plaintiff's recovery." Affirmed.

2. "The delay of the plaintiff to collect the notes at maturity, or to bring suit sooner for the recovery, is but slight evidence of the payment of the notes."

Answer. "If there were no other evidence or circumstances in this case than mere expiration of time, that would not be sufficient in itself to defeat the plaintiff's claim; but that fact must be taken into consideration by the jury, in connection with the other circumstances and facts in the case, and given such weight as it may be entitled to, as explained by such facts and circumstances; and as thus explained, we answer this point in the affirmative." (Twelfth assignment of error.)

6. "If J. T. Lee endorsed and delivered, as a gift, the notes in question to his wife, as her own separate property, and Jacob Edmonds knew it, any declarations or acts of J. T. Lee, after such delivery and knowledge of Edmonds, in the absence of Mrs. Melissa Lee, should be disregarded by the jury in making up their verdict."

Answer. "If the husband endorsed these notes over to his wife as a gift with Jacob Edmond's knowledge and consent, the result stated in this point would follow, but the jury must find this from all the facts in the case; and as further explained by defendants' points and our answers thereto, we answer this point in the affirmative." (Fourteenth assignment of error.)

Defendants asked the court to charge:

2. "The possession of choses in action, such as the notes in suit, for instance, by the wife while cohabiting with the hus-

band, is not evidence of title in the wife. In such case the wife is bound to show by satisfactory primary evidence her title to such choses in action, and in the absence of such evidence, the notes would remain the property of the husband."

Answer. "When they make use of the words 'choses in action,' that means a note or due bill, something of that kind. In this case it means these notes in suit. We will call your attention to a decision of the Supreme Court on that subject, in a late case, delivered by Justice GORDON, which expresses it rather more pertinently than we are able to. He says: 'Before the Act of 1848, the marriage contract vested the right to the personal property of the wife in the husband. She had no such thing as a separate and independent personal estate. Since that Act she may not only continue to own and hold the property she had at the time of the marriage, but she may, during coverture, acquire a separate estate. In favor of such an estate, however, there is no legal presumption, but the contrary; the husband is presumed to be the owner of the property of which he and the wife have the joint possession. Does she purchase lands or goods, their price is presumed to come from the pockets of the husband; or does he transfer to her property, real or personal, it is presumed to be a gift from him to her. Thus the Act of 1848, whilst it makes it possible for a feme covert to have and enjoy a separate estate, raises no presumption in favor of the existence of such an estate. She must affirmatively establish that fact, and this, not only because of the ease with which the husband's creditors might otherwise be defrauded, but because, ordinarily, it is impossible for her to have a possession separate and distinct from her husband; hence one of the most obvious and prominent marks of proprietorship is, in her case, not only wanting, but such possession being usually attributed to the husband, a presumption of his ownership naturally follows, by which his credit is increased. Even in a case where a widow claims property as against her husband's estate, it has been held that she must show by evidence which does not admit of a reasonable doubt, either that she owned it at the time of her marriage, or else acquired it afterwards by gift, bequest, or purchase. In case of a purchase after marriage, the burthen is upon her to prove distinctly that she paid for it with funds which were not furnished by the husband. To bring the property of a married woman under the protection of the Act of 1848—that is the married woman's Act—it is made necessary by the letter, as well as the spirit of the statute, to prove that she owns it. She must identify it as property which was hers before marriage, or prove how she came by it afterwards. Evidence that she purchased it, amounts to nothing unless it be accompanied

[Lee v. Newell.]

by clear and full proof that she paid for it by her own separate funds. In the absence of such proof, the presumption is a violent one that her husband furnished the means of payment.'

"In addition to that, gentlemen, we say to you that a husband has a right to make a gift to his wife, and where the gift is made to the wife under proper circumstances, it is good, and she can hold it as such; but that must not be against creditors. He must not denude himself of property or the right whereof the creditor has the right to make his money, for the purpose of creating a maintenance or support for the wife in the shape of a gift. If so, it would be fraudulent as to those creditors. But if there is no creditor to suffer, and the man has ample remaining to pay his debts, so that there is no one to be injured, then it is simply a matter between husband and wife, and if the husband gives it, he would not have the right to reclaim it. There is the law. It belongs to the wife.

"In addition to creditors, if there were dealing between men —say Jacob Edmonds and Jefferson T. Lee—and there was an understanding between them, like that mortgage debt, that these notes would be satisfied and paid by that mortgage debt, and that was the original understanding, and Jacob Edmonds did not have knowledge of nor consent to the transfer to the wife and did not agree that she should hold the notes,—he had a right to follow them because they are under seal—they are not negotiable. He had a right to follow them; and a settlement honestly made, bona fide, between him and Jefferson T. Lee afterwards of those notes would satisfy them, so far as Jacob Edmonds was concerned." (Fifteenth assignment of error).

3. "That in the case of acquisition by the wife after marriage of choses in action, such as the notes in suit, the law presumes that they are the property of the husband in the absence of satisfactory primary evidence that she purchased the same and paid for them out of her separate estate, and there being no such proof in this case, the verdict should be for the defendants, if the jury believe from the evidence that Jacob Edmonds settled and paid the notes in suit, either by applying them to the payment of a mortgage he held against J. T. Lee, or by any other settlement between the parties."

Answer. "We answer that in the affirmative." (Sixteenth assignment of error).

In the general charge the court instructed the jury, inter alia, as follows:

"Gentlemen, you must take this testimony all together, with the notes, the time that has run, the evidence on behalf

of the defence, the rebutting evidence on behalf of the plaintiff, and the rebutting testimony subsequently offered on behalf of the defendants. . . . . . Time becomes material in connection with the circumstances in the case showing payment.    [Settlement—anything that settles a note, such as settling between parties—would amount to payment and that is what we meant by payment.   Payment can be made by settlement between parties, of accounts, by notes, adjusting their affairs, liquidation, just as much as direct payment.]   (Eleventh assignment of error).   Whenever you hear us use the word "payment," in reference to the points or the answers we simply mean that it was satisfied between the parties in some way."

Verdict for the defendants and judgment thereon; whereupon the plaintiff took this writ of error, assigning for error the answers to points and the rejection of evidence as above set out; and that part of the general charge included in brackets.

*Maffett* and *Jenks* (with whom were *Ross* and *Wilson* and *Boggs & Weidner*) for plaintiff in error.—The deed of reconveyance from the assignee to Lee was admissible to rebut the idea of insolvency contended for by the defendants.   That part of the general charge complained of in the eleventh assignment, permitted the jury to find *payment* from *settlement*, while in fact there was no evidence of any settlement between the parties which would satisfy these notes.   In answer to the defendants' second point the court read the opinion of the Supreme Court in Wilson *v.* Silkman, 1 Out. 512, which defines the burden of proof cast on a wife in a contest with the *creditors* of her *insolvent* husband.   This case is a suit by a *solvent* husband for the use of his wife, against his *solvent* *debtors*, and the opinion in Wilson *v.* Silkman, has no bearing on it whatever.   Mrs. Lee's title could in no way affect the defendant's liability to pay the notes, and she was not re-required to make any such proof thereof as the jury were led to suppose she must by the answer to defendants' second point. It was no defence to the notes to allege want of title in her : Artisan's Ins. Co. *v.* Mooney, 4 Brew. 103 ; Crawford *v.* Stewart, 38 Pa. St. 35 ; Armstrong *v.* City of Lancaster, 5 Watts 68 ; Memphis, etc., R. R. Co. *v.* Wilcox, 48 Pa. St. 161 ; Reynolds *v.* Richards, 14 Pa. St. 205.

*Wm. L. Corbett* (with whom were *B. J. & A. B. Reid* and *W. A. Hindman*) for defendants in error.—Lee was the debtor of Edmonds by the bond and mortgage and remained so until they were settled and satisfied.   A right existed in Edmonds

[Lee v. Newell.]

to have so much of this indebtedness applied as set-off to the notes in suit as would satisfy them. This right to set off, Edmonds could not be deprived of even by an assignment or transfer to a holder for value: Thompson v. McClelland, 29 Pa. St. R. (5 Casey) 475; Jacoby v. Guier, 6 S. & R. 448; Filbert v. Hawk, 8 Watts 443. The case of Wilson v. Silkman was properly read to the jury and was applicable to Mrs. Lee's claim to be the owner of the notes. If the notes were used by her husband, J. T. Lee in a settlement and payment of the mortgage debt due Edmonds, Edmonds was, until such satisfaction was consummated, a creditor of Lee, and Lee was Edmonds' debtor. Payment may be presumed "from an intermediate settlement of accounts:" 2 Wharton's Law of Evidence, Section 1363. "So payment of a debt, after the death of the parties, may be presumed from the fact that at the time of maturity the debtor was in opulence and the creditor in needy circumstances:" Levers v. Van Buskirk, 4 Pa. St. (4 Barr) 309; Henderson v. Lewis, 9 S. & R. 379; Lesley v. Nones, 7 S. & R. 410; Diamond v. Tobias, 12 Pa. St. 312; Connelly v. McKean, 64 Pa. St. 113. Time was properly submitted to the jury, along with the other testimony in the case.

Mr. Justice TRUNKEY delivered the opinion of the court, November 10th, 1884.

On May 7th, 1874, Lee gave a bond, secured by mortgage, for $7,000 which apparently remained unsatisfied till December 31st, 1880. At the date of the mortgage Lee held Edmond's note of May 28th, 1866, for $321, and seven days after its date Edmonds gave Lee five notes, each for $1,000. The notes are under seal, and the plaintiff claims to recover on all of them in this action. The plea admits the evidence of indebtedness and avers payment. Between the date of the last five notes and the death of Edmonds, he and Lee had various business transactions, but it is neither alleged nor proved that if Lee gave the notes to his wife, the gift was intended to defraud Edmonds, or could operate as a fraud upon him. There was nothing at any time, so far as concerned Edmonds, to prevent the gift. If made, his security of the mortgage, his right to defalk any debt he held against Lee, and his right to pay Lee, until knowledge of the transfer, remained unaffected: Rider v. Johnson, 20 Pa. St. 190; Thompson v. McClelland, 29 Id., 475; Filbert v. Hawk, 8 Watts 443. If there was no evidence of a gift of the notes by Lee to his wife, the naming her as a use party was of no consequence to the defendants. In such case the cause ought to have been tried, and likely would have been, as if her name were omitted. The

11 OUTERBRIDGE.—19

defendants proved the declarations of Mrs. Lee made in absence of her husband, in 1866 or 1867, respecting their indebtedness to Edmonds. That testimony could not have been offered and received on any other principle than that she was the owner of the notes, or that there was some evidence of her ownership.

The court submitted the evidence tending to show that Mrs. Lee owned the notes, and that Edmonds had knowledge of the transfer. If they were transferred to her it was a material question when notice thereof was given to Edmonds. Before he had knowledge of the transfer he would deal and settle with Lee respecting the notes as if Lee owned them; and their declarations about indebtedness between them might be understood as referring to other things than the notes owned by Lee's wife. Certainly it would be an important fact to keep in view in making proper inferences from their acts and conversation.

It is immaterial what consideration induced the transfer. Whether Mrs. Lee paid the full amount in money inherited by her, or received the notes as a gift, she took them subject to legal and equitable defences, same in one case as the other. It made no difference to Edmonds whether Lee sold or gave her the notes. After he knew they had become her property he could not make new arrangements with Lee to her prejudice; nor could he satisfy them by a settlement with Lee, unless the settlement was founded on matters that would be a defence in an action on the notes—a defence existing before and at the time he obtained knowledge of her title.

In answer to the defendants' second point the learned judge of the common pleas instructed the jury fully and correctly respecting the burden upon a wife to establish her claim to money or property in a contest with her husband's creditors. He also told them that a husband has the right to make a gift to his wife, if he has no creditors, or has ample left to pay his debts so no one will be injured. All that was inapplicable to this case, but it was not harmless. The jury must have understood that it had something to do with the case before them. They might well have inferred that if Lee had creditors, other than Edmonds, that the transfer was a fraud as to those creditors and therefore void as to Edmonds. There was no testimony warranting them to consider the gift as affecting Lee's creditors. This issue is not with a creditor. The suit is against a debtor who alleges payment of the debt. If it be true that there was an understanding between Lee and Edmonds that the notes should be satisfied and paid by the mortgage debt, his right to enforce it rests on other principles than

those established for protection of a man's creditors against fraudulent claims by members of his family.

The instructions in response to the defendants' second point directly led to affirmance of their third, namely, there being no proof that the wife purchased the notes in suit, and paid for them out of her separate estate, the verdict should be for defendants, if Edmonds settled and paid the notes either by applying them to the payment of a mortgage he held against Lee, or by any other settlement between the parties. There was no pretence of a purchase, the plaintiff claimed a gift. It was as lawful for Lee to pass the title to the notes by gift to his wife, as for him, upon good consideration, to transfer them to a stranger. After knowledge of such gift by Edmonds, as already remarked, he could not avail a defence wittingly made up by himself and Lee in violation of her rights.

The plaintiff's sixth point,—" If Jefferson T. Lee indorsed and delivered, as a gift, the notes in question to his wife, as her separate property, and Jacob Edmonds knew it, any declarations or acts of J. T. Lee after such delivery and knowledge of Edmonds, in the absence of Mrs. Melissa Lee, should be disregarded by the jury in making up their verdict," was answered as follows: " If the husband indorsed these notes over to his wife as a gift with Jacob Edmonds' knowledge and consent, the result stated in the point would follow, but the jury must find this from all the facts in the case; and as further explained by defendants' points and answers thereto, we answer this point in the affirmative." Perhaps the jury could detect something in that point that really was affirmed. Edmonds' consent to the gift was unnecessary, unless for the purpose of barring his then existing defences and the proposition involved no such bar; and the explanation contained in the defendants' second and third points and the answers thereto, was that unless Mrs. Lee paid for the notes out of her separate estate, any settlement of them by Lee and Edmonds would entitle the defendants to a verdict. The fourteenth, fifteenth and sixteenth assignments of error must be sustained.

It was permitted the defendants to give in evidence the exemplification of the proceedings in bankruptcy in the matter of Jefferson T. Lee. Testimony was admitted on part of the plaintiff tending to show that all along Lee had continued in the possession and enjoyment of his property notwithstanding that proceeding. After the beginning of this suit the assignee reconveyed all the property to Lee, and we think that deed was admissible in evidence. It is slight evidence, yet as the end of the proceeding introduced by the plaintiff, it should not have been rejected.

[Lee *v*. Newell.]

There are numerous assignments of error to the admission of testimony of the declarations and admissions of Lee, made in the absence of Mrs. Lee and, as alleged, after she had acquired title to the notes. It was a matter in dispute whether there was a gift, and if so when it was made and when it came to the knowledge of Edmonds. Hence, the acts and declarations of Lee were admissible, as if there were no use party, and their weight and consideration depended much upon whether the jury found the fact of the alleged gift, and if so, when it was made and when it came to Edmonds' knowledge.

The explanatory remarks respecting the plaintiff's first point are free of error. A delay of seven or eight years before bringing suit generally is slight evidence of payment, in some circumstances it would be stronger than in others, and always where it is submitted to the jury to infer payment from facts and circumstances, the weight to be given to delay or promptness in bringing the suit, is for them to determine.

Nor can the eleventh assignment be sustained. The plaintiff contended there was no evidence of a settlement, and therefore it was error to permit the jury to infer payment from a settlement. Wilson testifies that late in the fall of 1880, he met Lee and Edmonds, and in the conversation, Edmonds remarked, " that he had fixed that mortgage against Lee that day, and that he didn't owe Lee anything now, and that Lee didn't owe him anything, and that Lee said: ' That's so ;' or something to that effect." Divens says that in the spring of 1878 he settled his own accounts with Lee and then Lee told him that the day before he had settled with Edmonds. There was other evidence tending to show a settlement which need not now be noted. The whole was sufficient to submit to the jury.

We deem it unnecessary to remark any other assignments, which are not well taken.

> Judgment reversed and venire facias de novo awarded.